<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ERIC D.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 2:24-cv-8609 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Eric Dixon's ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 405(g) (ECF No. 1), the Commissioner's motion to vacate the decision and to remand the matter for additional administrative proceedings and further evaluation of the application pursuant to sentence four of 42 U.S.C. § 405(g) (ECF No. 16), and Plaintiff's cross-motion to reverse the decision and to remand the matter for limited administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) (ECF No. 17). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed and considered the submissions filed in connection with the appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's motion to vacate the decision and remand the matter pursuant to sentence four of 42 U.S.C. § 405(g) is **DENIED**; Plaintiff's cross-motion to reverse the decision is **DENIED**; and the Commissioner's decision is

**VACATED** and the matter is **REMANDED** for additional administrative proceedings and further evaluation consistent with this Opinion.

### I. BACKGROUND

This matter has a protracted factual and procedural history, involving a prior final decision denying Plaintiff's application for DIB, dated July 14, 2017, and a subsequent appeal, which proceeded through this Court before the Honorable Kevin McNulty, U.S.D.J. *Dixon v. Comm'r of Soc. Sec.*, No. CV 18–13664 (KM), 2020 WL 831839 (D.N.J. Feb. 20, 2020). As the parties are intimately familiar with the facts and procedural history of this matter, the Court incorporates the extensive factual and procedural background sections set forth in Judge McNulty's opinion, *see generally Dixon*, 2020 WL 831839, at *1–5, and succinctly recounts only the relevant portions herein.

#### A. Procedural History

This matter arises out of the Commissioner's final decision denying Plaintiff's application for DIB, dated April 29, 2024. (ECF No. 1.) On May 27, 2014, Plaintiff applied for DIB alleging disability due to two severe impairments—degenerative disc disease with radiculopathy and obesity—beginning July 13, 2013. (Transcript of Proceedings[1] ("Tr.") (ECF No. 4) at 102–04, 202–03.) The Commissioner initially denied the application on October 17, 2014 (Tr. at 128–32), and again upon reconsideration on April 13, 2015 (Tr. at 136–38).

Plaintiff, through counsel, then filed a written request for a hearing. (Tr. at 139–40.) Administrative Law Judge ("ALJ") Scott Tirrell held a hearing on April 7, 2017. (Tr. at 34–88). In a decision dated July 14, 2017, ALJ Tirrell found Plaintiff was not disabled within the meaning of the Act between the date he last worked—July 13, 2013—and the date he was last insured—

---

[1] The administrative record is set forth in this transcript. (*See generally* ECF No. 4.)

September 30, 2017.[2] (Tr. at 566–85.) The decision became final when the Appeals Council declined review on July 12, 2018. (Tr. at 1–6.)

On September 7, 2018, Plaintiff filed the prior appeal of the final decision with this Court pursuant to 42 U.S.C. § 405(g). *Dixon*, 2020 WL 831839, at *9. On February 20, 2020, Judge McNulty vacated the final decision and remanded the action to the Commissioner for further administrative proceedings. *See id.* at *12.

ALJ Peter Lee held supplemental hearings on May 24, 2023 (Tr. at 518–45), and January 8, 2024 (Tr. at 499–504). In a decision dated April 29, 2024, ALJ Lee found Plaintiff was not disabled within the meaning of the Act between July 13, 2013, and September 30, 2017. (Tr. at 457–75.) The decision became final on June 29, 2024. (Tr. at 458.)

On August 21, 2024, Plaintiff filed the subject civil action appeal of the final decision with this Court pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) On May 15, 2025, Plaintiff filed his motion brief pursuant to Supplemental Rule 6 for Social Security Actions under 42 U.S.C. § 405(g). (ECF No. 14.)

On June 11, 2025, the Commissioner filed the motion to vacate the final decision and to remand the action for additional administrative proceedings and further evaluation pursuant to Sentence 4 of 42 U.S.C. § 405(g). (ECF No. 16.) In response, Plaintiff filed a cross-motion to reverse the final decision and to hold Plaintiff was disabled within the meaning of the Act between July 13, 2013, and September 30, 2017, pursuant to 42 U.S.C. § 405(g). (ECF No. 17.)

---

[2]  ALJ Tirrell erroneously found the date Plaintiff was last insured was September 30, 2016 (Tr. at 566–85), which the Court relied upon in support of its prior opinion. *See Dixon*, 2020 WL 831839, at *1–5. The error was subsequently corrected to reflect Plaintiff was last insured on September 30, 2017. (Tr. at 463.) For purposes of consistency, this Opinion will refer to the date as September 30, 2017.

### B.    Factual Background

#### 1.    Plaintiff's History

Plaintiff is presently sixty years old and has a history of severe lower back conditions, which resulted in a lumbar discectomy in 2005 and a lumbar fusion in 2009. (Tr. at 281–302.) On July 13, 2013, Plaintiff was struck by a motor vehicle while walking in a crosswalk and thrown to the ground, which is the injury that caused him to file for DIB. (Tr. at 47.) Plaintiff has a high school diploma and worked a variety of jobs prior to the accident. (Tr. at 42–47, 530–33.)

As a result of the accident, Plaintiff allegedly suffers from constant pain in his lower back and intermittent pain in his neck. (Tr. at 49–59.) He alleges the pain in his lower back radiates through his left leg, which gives out at times. (Tr. at 50–51.) Plaintiff claims his pain worsens if he stands for more than ten minutes or sits for more than twenty minutes. (Tr. at 50–51, 58–59.) On September 30, 2014, a CT scan was taken of his lumbar spine, which indicated a decompressed spinal canal, post-surgical changes at L4–S1, and spondylotic changes at L3–L4. (Tr. at 451.)

Between July 13, 2013, and September 30, 2017, Plaintiff received medical treatment relating to his lower back and neck conditions, including chiropractic care, physical therapy, and pain management. (Tr. at 303–78, 386–456.) Plaintiff was ultimately prescribed a transcutaneous electrical nerve stimulation ("TENS") unit, a back brace, and pain medication, which Plaintiff has reported in combination increased his ability to perform daily activities, including walking and bending. (Tr. at 412–17.) Plaintiff claims with the assistance of the back brace and a walking stick he can walk at a slow pace approximately one block before he is required to rest due to pain. (Tr. at 56–57.) Although pain medication helps to alleviate the pain, Plaintiff has difficulty concentrating or staying awake while on pain medication. (Tr. at 56.)

The record establishes Plaintiff did not engage in substantial gainful activity between the date of the alleged injury—July 13, 2013—through the date he was last insured—September 30, 2017. (Tr. at 41–47, 273, 529–35.)

## 2.    Administrative History

On October 6, 2014, Betty Vekhnis, M.D., conducted a consultative examination on behalf of the State. (Tr. at 379–85.) Dr. Vekhnis noted Plaintiff was able to walk in her office without the assistance of his cane and with a normal heel to toe gait. (Tr. at 379.) Dr. Vekhnis examined Plaintiff's lumbar spine and reported no vertebral tenderness but a limited range of motion.[3] (Tr. at 379–80.) She also examined Plaintiff's upper extremities and reported a full range of motion in his shoulders, right elbow, wrists, and hands, which had a normal grip strength.[4] (Tr. at 380–83.) As a result, Dr. Vekhnis opined Plaintiff was capable of "walk[ing] short distances without the use of an assistive device for ambulation" and "had normal functions of his hand[s] for fine and gross motor manipulations." (Tr. at 380–83.) Although Dr. Vekhnis did not offer a specific distance in which Plaintiff was capable of walking without the use of an assistive device (Tr. at 380–83), the adjoining "Passive Range of Motion Chart" reports he can walk "[o]ne block" (Tr. at 383).

On October 16, 2014, Deogracias Bustos, M.D., completed a disability determination on behalf of the State. (Tr. at 105–15.) Based on his review of the medical records, Dr. Bustos determined Plaintiff suffers from two severe impairments: a spine disorder and obesity, which

---

[3] In his opinion, Judge McNulty states, "Dr. Vekhnis examined [Plaintiff]'s spine, noting that there was no vertebral tenderness and he had full range of motion." *Dixon*, 2020 WL 831839, at *3. The record, however, states Plaintiff had a full range of motion in his cervical spine and a limited range of motion in his lumbar spine. (Tr. at 379–80; *see also* Tr. at 382 (reporting lumbar spine flexion-extension of 40 degrees).)

[4] Dr. Vekhnis noted a loss of terminal extension and limited supination in the left elbow. (Tr. at 380.)

reasonably can be expected to produce his claims of pain. (Tr. at 111.) Although these severe impairments result in exertional limitations, Dr. Bustos opined Plaintiff is "frequently" capable of carrying items weighing up to ten pounds and "occasionally" capable of carrying items weighing up to twenty pounds; standing/walking a total of four hours; and sitting a total of six hours in an eight-hour workday. (Tr. at 112.) Furthermore, Dr. Bustos opined Plaintiff is capable of "occasionally" climbing stairs, balancing, stooping, kneeling, and crouching and is "never" capable of climbing ladders, ropes, and scaffolds. (Tr. at 113.) As a result, Dr. Bustos concluded Plaintiff has a residual functional capacity ("RFC") to adjust to other skilled sedentary work and, as such, is "not disabled."[5] (Tr. at 113–15.)

On July 14, 2017, ALJ Tirrell conducted a hearing, which was attended by vocational expert "Smith." (Tr. at 34–88.) Smith provided classifications for Plaintiff's past work as a drivers' helper, a warehouse worker, a stock clerk, and a machine packager, which he classified as medium to heavy. (Tr. at 71–72.) When asked by ALJ Tirrell what, if any, work a hypothetical person who can stand/walk for a total of four hours in an eight-hour workday and can "occasionally" balance could perform, Smith provided three examples of "light" work that such an individual could perform—assembler arranger, information clerk, and fund raiser. (*See* Tr. at 71–73.)

In a written decision, dated April 7, 2017, ALJ Tirrell found Plaintiff was not disabled under the meaning of the Act between July 13, 2013, and September 30, 2017. (Tr. at 566–85.) Consistent with the five-step sequential evaluation process for DIB benefits, *see infra* Section III, ALJ Tirrell determined Plaintiff has not been engaged in substantial gainful activity since July 13, 2013, and has the following severe impairments: degenerative disc disease and obesity. (Tr. at

---

[5] On April 13, 2015, Dr. Bustos completed a second disability determination on behalf of the State. (Tr. at 116–27.) The outcome of the second determination is consistent with the first. (*Compare* Tr. at 105–15, *with* 116–27.)

571.) ALJ Tirrell found, however, that Plaintiff's severe impairments, both individual or in combination, did not meet or equal the severity of one of the list impairments in 20 C.R.F. Part 404, Subpart P, Appendix 1 ("Listing"). (Tr. at 471–79.) Specifically, ALJ Tirrell determined the impairments most closely equated to Listing 1.04 (Disorders of the Spine), but the record does not demonstrate either a compromised nerve root or a compromised spinal cord. (Tr. at 471–79.) ALJ Tirrell determined Plaintiff had an RFC capable of standing/walking for a total of four hours in an eight-hour workday and can "occasionally" balance. (Tr. at 580–81.) In support of same, ALJ Tirrell assigned "substantial weight" to the opinion of Dr. Vekhnis and "some weight" to the opinion Dr. Bustos. (Tr. at 579.) Based on his age, education, and RFC, ALJ Tirrell determined Plaintiff was incapable of performing his past work but was capable of performing "light work" with additional limitations–relying upon Smith's testimony. (Tr. at 578–81.)

On September 7, 2018, Plaintiff filed the prior appeal seeking to reverse or remand ALJ Tirrell's determination that Plaintiff was not disabled under the meaning of the Act between July 13, 2013, and September 30, 2017, pursuant to 42 U.S.C. § 405(g). *Dixon*, 2020 WL 831839, at *5. On February 20, 2020, Judge McNulty vacated the final decision and remanded the matter to the Commissioner for additional administrative proceedings and further evaluation. *Id.* at *12. Specifically, Judge McNulty held ALJ Tirrell failed to set forth a sufficient explanation in support of the determination that Plaintiff's degenerative disc disease in combination with his obesity did not equate to Listing 1.04 impairment. *See id.* at *8–12. Furthermore, Judge McNulty held ALJ Tirrell also failed to sufficiently address conflicting medical records indicating Plaintiff suffered significant physical impairments between July 2013 and October 2014. *Id.* at *12. Therefore, Judge McNulty ordered ALJ Tirrell to conduct a supplemental hearing, re-evaluate the evidence, and provide a sufficient explanation as to: (a) whether Plaintiff's combined impairments were equal in

severity to any Listing impairment between July 2013 and October 2014; (b) the conflicting pertinent medical evidence; and (c) the level and transferability of Plaintiff's skills to "light work." *Ibid.*

On May 24, 2023,[6] ALJ Lee conducted the supplemental hearing virtually, which was attended by vocational expert Dale E. Pasculli. (Tr. at 518–45.) Pasculli provided classifications for Plaintiff's past work as a "cleaner, industrial" and a "cleaner, housekeeper," which she classified as medium and light respectively. (Tr. at 539.) When asked by ALJ Lee what, if any, work a hypothetical person who can stand/walk for a total of six hours in an eight-hour workday and can "typically" balance could perform, Pasculli claimed such an individual could not work as a "cleaner, industrial" but could work as a "cleaner, housekeeper." (Tr. at 540.) Pasculli also provided three examples of other "light" work that such an individual could perform—routing clerk, photocopying machine operator, and cafeteria attendant. (Tr. at 540.) When asked by ALJ Lee what, if any, work a hypothetical person who can stand/walk for a total of only four hours in an eight-hour workday and can "occasionally" balance could perform, Pasculli claimed none. (Tr. at 460.)

In a written decision, dated April 29, 2024, ALJ Lee found Plaintiff was not disabled under the meaning of the Act between July 13, 2013, and September 30, 2017. (Tr. at 457–75.) Consistent with ALJ Tirrell, ALJ Lee determined Plaintiff has not been engaged in substantial gainful activity since July 13, 2013, and has the following severe impairments: degenerative disc disease and obesity. (Tr. at 463.) ALJ Lee also found that Plaintiff's severe impairments, both individual or in

---

[6] Although a supplemental hearing was promptly scheduled for December 11, 2020 (Tr. at 627–66), the supplemental hearing was re-scheduled, in relevant part, due to Plaintiff's incarceration between July 5, 2019, and May 11, 2024 (*See* Tr. at 783, 900–02).

combination, did not meet or equal the severity of any Listing impairment. (Tr. at 464–68.) Specifically, ALJ Lee determined the impairments most closely equated to Listing 1.15 (Disorders of the Skeletal Spine) or Listing 1.16 (Lumbar Spinal Stenosis), but the record did not demonstrate a comprised nerve root or cauda equina as required by same. (Tr. at 464.) In conflict with ALJ Tirrell, ALJ Lee determined Plaintiff had an RFC capable of standing/walking for a total of six hours in an eight-hour workday and can "typically" balance. (*See* Tr. at 465.) In support of same, ALJ Tirrell assigned "partial weight" to Dr. Vekhnis's opinion and "no persuasive weight" to Dr. Bustos's opinion. (Tr. at 468.) Based on his age, education, and RFC, ALJ Lee determined Plaintiff was capable of performing his past work, relying on the testimony of Pasculli. (Tr. at 460, 466–69, 540.)

## II.    STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541,

545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.    THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the

combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is

capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV.    DECISION

Plaintiff appeals the Commissioner's decision and requests the Court either reverse the decision and find Plaintiff is entitled to a period of disability beginning on July 13, 2013; or, in the alternative, vacate the decision and remand the action to the Commissioner for a new hearing pursuant to sentence four of 42 U.S.C. § 405(g). (ECF No. 1; *accord* ECF No. 14.) Plaintiff challenges ALJ Lee's step three determination that his severe impairments—degenerative disc disease and obesity—in combination do not equate to an impairment on the Impairment List as ALJ Lee failed to meaningfully consider the effects of his obesity. (*See generally* ECF No. 14 at 8–20.) Plaintiff also challenges ALJ Lee's step four determination that he retains the RFC to perform his past relevant work as a "cleaner, housekeeper," as the determination is not supported by substantial evidence and ALJ Lee failed to adequately explain his reasons for discounting the contrary opinion of Dr. Vekhnis and rejecting the contrary opinion of Dr. Bustos. (*See generally* ECF No. 14 at 20–36.) Although Plaintiff requests if the Court vacates the final decision and remands the action to the Commissioner for a new hearing that the Court order the new hearing be held before another ALJ (*see* ECF No. 14 at 8, 20, 35–36), Plaintiff failed to develop the issue in the argument section of his motion brief (*see generally* ECF No. 14 at 8–36; *but see id.* at 6 (claiming ALJ Lee failed "to recuse himself based upon the statistical reality that [he] denies 98% of all cases brought by [Plaintiff's counsel] and 0% of cases remanded"); *id.* at 31 n.6 (stating ALJ Lee's denial of Plaintiff's motion for recusal "is not an issue in this case" but requesting the Court

to order the new hearing be held before another ALJ "based on a 98% denial rate and a 100%
remand denial rate")).

In response, the Commissioner filed a motion to vacate the final decision and remand the
action for additional administrative proceedings and further evaluation pursuant to sentence four
of 42 U.S.C. § 405(g). (ECF No. 16.) The Commissioner concedes there exists unresolved factual
issues, "which must be resolved by an ALJ." (ECF No. 16 at 1.) Although the Commissioner does
not identify any allegedly unresolved factual issues specifically, the Commissioner notes
Plaintiff's challenges to ALJ Lee's step three and step four determinations are factual issues
generally and, as such, "require further evaluation of the evidence and supporting explanation by
the ALJ." (ECF No. 16 at 3.) Therefore, the Commissioner requests the Court to vacate the final
decision and remand the action to the Commissioner to: complete the administrative record;
conduct a new hearing; re-evaluate the evidence of record; and "issue a new decision that includes
additional articulation of how the evidence supports [the ALJ's] findings." (*See* ECF No. 16 at 4.)
In response to Plaintiff's request the new hearing be held before another ALJ, the Commissioner
argues it is standard process to assign the same ALJ absent evidence of bias. (ECF No. 16 at 3–4
(citing, in part, Hearings, Appeals, and Litigation Law Manuel (HALLEX) I-2–1–55(D)(2)).)

In response, Plaintiff filed a cross-motion opposing the Commissioner's motion to remand
and requesting the Court reverse the decision and find Plaintiff is entitled to a period of disability
beginning on July 13, 2013, pursuant to sentence four of 42 U.S.C. § 405(g). (ECF No. 17.)
Plaintiff argues the administrative record is in fact complete and the substantial evidence clearly
establishes Plaintiff is entitled to a period of disability beginning on July 13, 2013. (*See generally*
ECF No. 17.) Plaintiff also argues the Commissioner does not identify a specific unresolved factual
issue or propose any specific remand instructions, which Plaintiff claims if remanded will likely

result in a subsequent decision involving the same factual issues. (*See generally* ECF No. 17.) Although Plaintiff again requests if the action is remanded to the Commissioner, the Court order the new hearing be held before another ALJ (ECF No. 17 at 6). Plaintiff again failed to develop the issue (*see generally* ECF No. 17).

### A.    The Commissioner's Motion to Remand Under Sentence Four of 42 U.S.C. § 405(g)

A district court may remand a final decision for additional administrative proceedings and further evaluation "only as provided in sentences four and six of 42 U.S.C. § 405(g)." *Melkonyan v. Sullivan*, 501 U.S. 89, 90 (1991). Therefore, the Court may only remand a decision either: (1) pursuant to sentence four "in conjunction with a judgment affirming, modifying, or reversing the [Commissioner]'s decision"; or (2) pursuant to sentence six "in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner]'s decision, but only if the claimant shows good cause for failing to present the evidence earlier." *Ibid.* As the Third Circuit recently noted, a district court may not remand a decision absent either a "substantive ruling" under sentence four or the "emergence of new evidence" under sentence six. *Clinkscale v. Comm'r of Soc. Sec.*, No. 24–2191, 2025 WL 2528907, *2 (3d Cir. Sept. 3, 2025); *Vazquez v. Saul*, No. CV 20–2595 (KM), 2021 WL 2680101, at *1 n.1 (D.N.J. June 30, 2021).

Here, the Commissioner's motion to remand requests the Court remand the decision absent a substantive ruling pursuant to sentence four. (*See generally* ECF No. 16.) Neither Plaintiff nor the Commissioner argues there exists new evidence and good cause to remand the action pursuant to sentence six. Therefore, the Court may not remand the action absent a substantive ruling affirming, modifying, or reversing the final decision. *Clinkscale*, 2025 WL 2528907, *2. Accordingly, the Commissioner's motion to remand under sentence four of 42 U.S.C. § 405(g) is **DENIED**. Having determined same, this Court shall treat the motion to remand as a responsive

brief pursuant to Supplemental Rule 7, and Plaintiff's cross-motion to reverse as a reply brief pursuant to Supplemental Rule 8.[7]

### B.    Plaintiff's Challenge to ALJ Lee's Step Three Determination

Plaintiff argues ALJ Lee failed to properly consider the combined effect of his severe impairments—degenerative disc disease and obesity—when assessing medical equivalence to an impairment on the Impairment List. (*See generally* ECF No. 14 at 8–20.) Specifically, Plaintiff claims ALJ Lee relied on the wrong Social Security Ruling ("SSR") when considering the effect of his obesity on his degenerative disc disease (ECF No. 14 at 13–14); equated his severe impairments to the incorrect impairment on the Impairment List (ECF No. 14 at 18–19); and failed to adequately explain his step three determination (ECF No. 14 at 13–18). In response, the Commissioner concedes ALJ Lee's step three determination "require[s] further evaluation of the evidence and supporting explanation by the ALJ." (ECF No. 16 at 3.)

### 1.    ALJ Lee Relied on the Correct SSR

In support of his step three determination, ALJ Lee relied on SSR 19–2p. (Tr. at 467.) Specifically, ALJ Lee notes SSR 19–2p provides: "obesity can cause limitation of exertional and postural functions, and that in cases involving obesity, fatigue may affect an individual's physical and mental ability to sustain work activity" and "the combined effects of obesity with other

---

[7] On October 21, 2024, the Court entered an Order setting deadlines for briefs pursuant to Supplemental Rule 7 for Social Security Actions under 42 U.S.C. § 405(g). (ECF No. 5.) Notably, the Order required the Commissioner to file a responsive brief within thirty (30) days after Plaintiff filed his motion brief. (*See* ECF No. 5.) Therefore, the Commissioner's responsive brief was to be filed by June 14, 2025. (*See* ECF No. 5; *see also* ECF No. 14 (filing Plaintiff's motion brief on May 15, 2025).) The motion to remand was filed within the relevant time period on June 11, 2025. (*See generally* ECF No. 16.) As the Commissioner motion to remand was timely filed and does not oppose remand (*see generally* ECF No. 16), the Court relaxes the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure, and the Supplemental Rules for Social Security Actions in the interest of justice and shall treat the motion to remand as a responsive brie, *see* L. Civ. R. 1.1; L. Civ. R. 83.2(b).

impairments may be greater than might be expected without obesity." (Tr. at 467.) In response, Plaintiff argues ALJ Lee was required to rely on SSR 02–1p. (ECF No. 14 at 13–14.) On May 20, 2019, however, the SSA rescinded and replaced SSR 02–1p with SSR 19–2p. *SSR 19–2p*, 2019 WL 2374244, at *5 n.14 (May 20, 2019). Furthermore, the SSA has advised SSR 19–2p is to be applied "to claims that are pending on and after the applicable date." *Ibid.* As Plaintiff's claim was still pending on May 20, 2019, the Court finds ALJ Lee relied on the correct SSR when considering the effect of Plaintiff's obesity on his degenerative disc disease.

### 2. ALJ Lee Equated Plaintiff's Severe Impairments to the Correct Impairments on the Impairment List

Similarly, in support of his step three determination, ALJ Lee equated the severe impairments to Listing 1.15 (Disorders of the Skeletal Spine) and 1.16 (Lumbar Spinal Stenosis). (Tr. at 464.) In response, Plaintiff argues ALJ Lee was required to equate the impairments to Listing 1.04 (Disorders of the Spine). (ECF No. 14 at 18–19.) On April 2, 2021, however, the SSA revised the listing for spinal disorders eliminating Listing 1.04 and setting forth additional criteria in Listings 1.15 and 1.16. Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164–01, 2020 WL 7056412 (Dec. 3, 2020). These changes were to be applied "to claims that are pending on or after the effective date." *Ibid.* As Plaintiff's claim was still pending on April 2, 2021, the Court finds ALJ Lee equated the severe impairments to the appropriate Listings.

### 3. ALJ Lee Failed to Adequately Explain Whether Plaintiff's Combined Severe Impairments Equaled Either Listing 1.15 or 1.16

During step three, the ALJ compares the medical evidence of a claimant's impairments with the Impairments List in 20 C.F.R. Part 404, Subpart P, Appendix 1, which are presumed severe enough to preclude any gainful work. *See Holley v. Colvin*, 975 F. Supp. 2d 467, 476 (D.N.J.

2013), *aff'd*, 590 F. App'x 167 (3d Cir. 2014). The listings articulated in the Impairments List are descriptions of various physical and mental illnesses and abnormalities, categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). All impairments are defined "in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. "If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled. . . . If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four." *Holley*, 975 F. Supp. 2d at 476. To be found disabled, however, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

"For a claimant to show that his [or her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*; *see* SSR 83–19, Dep't of Health & Human Servs. Rulings 90 (Jan. 1983) ("An impairment 'meets' a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment."); 20 C.F.R. § 416.926(a) (1989) (noting claimant's impairment is "equivalent" to listed impairment "if [the medical findings are] at least equal in severity and duration to the criteria of any listed impairment"). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531–32 ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of overall functional impairment . . . . The functional consequences of the impairments . . . irrespective of their nature or extent, cannot justify a determination of equivalence" [sic].)

To conclude an applicant is not disabled under the step three analysis, the ALJ must "set forth the reasons for his [or her] decision." *Burnett*, 220 F.3d at 119 (remanding where ALJ made only conclusory statements without mentioning any specific listed impairments or explaining reasoning). Conclusory statements have been found to be "beyond meaningful judicial review." *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). As the Third Circuit has explained, the ALJ is not required to "use particular language or adhere to a particular format in conducting his [or her] analysis . . . . [but must] ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. The ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470–71 (3d Cir. 2005).

Although an ALJ's decision on step three need not address every minor piece of medical evidence in the record, the decision must show a meaningful consideration of the elements of the listings, and whether the weight of medical evidence presented shows a plaintiff meets these elements. *Ramazan K. v. Dudek*, No. 2:24–CV–06138 (BRM), 2025 WL 1720409, at *11 (D.N.J. June 20, 2025). Conclusory statements that an impairment does not meet a certain listing are insufficient. *Compare Parrotta v. Kijakazi*, Civ. A. No. 21–13602, 2022 WL 2289554, at *9–11 (D.N.J. June 24, 2022), *and Rivera v. Saul*, Civ. A. No. 20–05308, 2021 WL 5122075, at *9–10 (D.N.J. Nov. 4, 2021) (affirming ALJ step three determination evaluating specific symptoms included in listings and considering medical evidence to determine whether symptoms were met), *with Dance v. Comm'r of Soc. Sec.*, Civ. A. No. 20–03141, 2021 WL 3144696, at *4–5 (D.N.J. July 26, 2021) (reversing ALJ step three determination that failed to specifically match proffered medical evidence to elements of relevant listing).

Here, ALJ Lee reviewed Plaintiff's severe impairments under Listing 1.15 (Disorders of the Skeletal Spine) and Listing 1.16 (Lumbar Spinal Stenosis). (Tr. at 464.) As ALJ Lee noted, to establish an impairment meets or equates to an impairment under Listing 1.15, a claimant is required to demonstrate a compromise of a nerve root as documented by:

> (a) Neuro-anatomic (radicular) distribution of pain, paresthesia, or muscle fatigue, consistent with compromise of the affected nerve root(s); (b) radicular distribution of neurological signs present during physical examination, or on a diagnostic test, and evidenced by the criteria of 1.15B(1), (2), and either (3) or (4); (c) findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine; and (d) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the criteria of 1.15D.

(Tr. at 464.) Similarly, to meet or equate to an impairment under Listing 1.16, a claimant is required to demonstrate a compromise of the cauda equina as documented by:

> (a) symptom(s) of neurological compromise manifested per the criteria of 1.16A(1), (2), or (3); (b) non-radicular neurological signs present during physical examination, or on a diagnostic test, and evidenced by the criteria of 1.16B(1) and either (2) or (3); (c) findings on imaging, or in an operative report, consistent with compromise of the cauda equina with lumbar spinal stenosis; and (d) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the criteria of 1.16D(1) or (2).

(Tr. at 464.) Reviewing the administrative record, ALJ Lee concluded "[t]he record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment." (Tr. at 464.) Such a conclusory statement is inherently insufficient and fails to show meaningful consideration of the elements of the listings, *Ramazan K.*, 2025 WL 1720409, at *11, which the Commissioner concedes (ECF No. 16 at 3).

Accordingly, as to step three, the Court finds it appropriate to remand for additional administrative proceedings and further evaluation, including, but not limited to, a meaningful consideration of the elements of the relevant listings and whether the weight of medical evidence presented shows Plaintiff met these elements within the relevant time period of July 2013 to October 2014. To the extent that any other errors may have occurred, such may be remedied by the Commissioner on remand.

## C.    Plaintiff's Challenge to ALJ Lee's Step Four Determination

Plaintiff argues ALJ Lee's step four determination that he retains the RFC to perform his past relevant work as a "cleaner, housekeeper" is not supported by substantial evidence and ALJ Lee failed to adequately explain his reasons for discounting the contrary opinion of Dr. Vekhnis and rejecting the contrary opinion of Dr. Bustos. (*See generally* ECF No. 14 at 20–36.) In response, the Commissioner concedes ALJ Lee's step four determination "require[s] further evaluation of the evidence and supporting explanation by the ALJ." (ECF No. 16 at 3.)

At step four in the disability determination process, an ALJ must assess the claimant's RFC and compare it to her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. The claimant bears the burden of proof on step four, *see Sykes*, 228 F.3d at 263, including to present the facts necessary for the ALJ to assess the claimant's RFC, *see Bowen*, 482 U.S. at 146 n.5. On appeal, a claimant must show that (1) an error occurred; and (2) but for that error, she might have proven her disability. *See Holloman*, 639 F. App'x at 814. If a claimant believes an error was made, he "must clearly identify the error and explain how the error actually 'affect[ed] [his or her] "substantial rights."'" *Id.* at 814 n.3 (first alternation in original) (quoting *Shinseki*, 556 U.S. at 407).

In determining a claimant's RFC, the ALJ is required to consider all relevant medical evidence from acceptable sources and "may not make speculative inferences from medical reports." *Plummer*, 186 F.3d at 429. "Although the ALJ may weigh the credibility of the evidence," *Burnett*, 220 F.3d at 121, "the ALJ may not reject evidence for no reason or for the wrong reason," *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007) (internal quotation marks omitted); *see also Plummer*, 186 F.3d at 429 ("[A]n ALJ is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence."). Rather, the ALJ "must give some indication of the evidence which he rejects and his [or her] reason(s) for discounting such evidence," *Burnett*, 220 F.3d at 121, pursuant to the framework articulated in 20 C.F.R. § 404.1520c. In evaluating the credibility of a medical opinion, the most important factors are its supportability and consistency with evidence from other sources. 20 C.F.R. § 404.1520c. Other relevant factors include, but are not limited to, whether the medical source received education or training in a relevant area of specialty, personally examined the claimant, or is familiar with the disability program's policies and requirements. 20 C.F.R. § 404.1520c(c)(3)(v), (4), (5).

Here, ALJ Lee determined Plaintiff had an RFC to perform "light work" except that Plaintiff can "frequently" balance. (Tr. at 465.) In support of same, ALJ Lee considered, in part, the opinions of Dr. Bustos and Dr. Vekhnis. (Tr. at 579.) Although ALJ Lee assigned "partial weight" to Dr. Bustos's opinions generally, he assigned the specific opinions that Plaintiff is capable of walking a total of four hours in an eight-hour workday and has "occasional" balance "no persuasive weight" as Dr. Bustos did not personally examine Plaintiff and did not provide a full function-by-function analysis. (Tr. at 468.) Similarly, ALJ Lee assigned only "partial weight" to Dr. Vekhnis's opinion that Plaintiff "can walk short distances without the use of an assistive device for ambulation" as the opinion is "vague as to what a short distance would entail." (Tr. at

468; *but see* R. 383 (stating Plaintiff can walk "[o]ne block" with an assistive device).) Furthermore, ALJ Lee only personally examined Plaintiff "one-time" and did not provide a full function-by-function analysis. (Tr. at 468.) In contrast, ALJ Lee noted "the evidence does not indicate any significant balance or standing/walking issues." (Tr. at 468.) ALJ Lee, however, fails to cite to a medical record indicating Plaintiff is capable of standing/walking more than four hours in an eight-hour workday or Plaintiff has "frequent" balance. (*See generally* Tr. at 457–75); *Plummer*, 186 F.3d at 429 ("[A]n ALJ is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence.").

In contrast, ALJ Tirrell determined Plaintiff had an RFC to perform "light work" except that Plaintiff "can stand and walk for a combined total of 4 hours in an 8 hour workday . . . [and] occasionally balance" (Tr. at 20), assigning "some weight" to Dr. Bustos's opinion and "substantial weight" to Dr. Vekhnis's opinion. (Tr. at 26–27). Notably, the administrative records available at the time of ALJ Tirrell's determination and ALJ Lee's determination are substantively identical as they relate to the relevant time period of July 2013 to October 2014. The Court notes the only substantive difference between the relevant administrative records appears to be the differing testimonies of the vocation experts as the initial vocation expert opined there exists substantial gainful work in the national economy for an individual capable of standing/walking a combined total of 4 hours with occasional balance (Tr. at 71–76), whereas the subsequent vocation expert opined there exists no gainful work for an individual capable of standing/walking less than a combined total of 6 hours and without frequent balance (Tr. at 539–43). In the absence of a sufficient explanation as to the ALJ's change in the credibility findings of Dr. Bustos and Dr. Bekhnis, the Court cannot conduct a meaningful review of the RFC determination at step four.

*Cotter*, 642 F.2d at 705. Having determined same, the Court makes no substantive determination as to the sufficiency of the ALJ's consideration of Plaintiff's obesity under step four.[8]

Accordingly, at to step four, the Court finds it appropriate to remand for additional administrative proceedings and further evaluation, including, but not limited to, a meaningful consideration of all relevant medical evidence providing some indication of the evidence he rejects and his reasons for discounting such evidence pursuant to the framework articulated in 20 C.F.R. § 404.1520c; meaningful consideration of the effect of Plaintiff's severe impairment of obesity on his ability to perform his past relevant work; and a sufficient and reasonable explanation for the change in RFC determinations identifying the relevant medical evidence supporting his prior RFC determination that Plaintiff was capable of more than four hours of standing/walking in an eight-hour workday and of "frequent" balance within the relevant time period of July 2013 to October 2014. To the extent that any other errors may have occurred, such errors may be remedied by the Commissioner on remand.

### D.    Plaintiff's Request that a New Hearing Be Held Before Another ALJ

Although Plaintiff failed to develop the issue in the argument section of his motion brief or his cross-motion (*see generally* ECF No. 14, ECF No. 17), the Court evaluates Plaintiff's request that on remand the new hearing be held before another ALJ on its merits as "it is constitutional in nature and appears non-waivable." *James R. v. Kijakazi*, No. CV 22–05030 (GC), 2023 WL 6389097, at *4 (D.N.J. Sept. 30, 2023).

---

[8] At step four in the disability determination process, an ALJ must conduct a meaningful review of the effect of a claimant's obesity, in combination with his or her other impairments, on the claimant's ability to perform past relevant work. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). Although an ALJ is not required to adhere to a particular format or to include particular language, meaningful review requires an ALJ to set forth the reasons for his or her decision in a sufficient manner to allow substantive judicial review. *See Burnett*, 220 F.3d at 119.

Pursuant to 20 C.F.R. § 404.940, an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." *Accord Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). As the Third Circuit recognized, under the Act a claimant has a right to due process requiring a disability hearing "be full and fair." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 857 (3d Cir. 2007). "The right to an unbiased ALJ is particularly important because of the active role played by ALJs . . . . to develop a full and fair record in social security cases." *Ventura*, 55 F.3d at 902. Therefore, in certain circumstances, an ALJ's bias may amount to a violation of due process. The threshold required to find an ALJ to be biased, however, "is very high." *Shanta B. v. Comm'r of Soc. Sec.*, No. CV 23–4232 (RK), 2024 WL 3534338, at *6–7 (D.N.J. July 25, 2024); *see, e.g., Valenti v. Com'r of Soc. Sec.*, 373 F. App'x 255, 258 (3d Cir. 2010) (holding the ALJ was biased where the ALJ engaged in "coercive, intimidating, and irrelevant questioning of the claimant"); *Ventura*, 55 F.3d at 905 (holding the ALJ was biased due to "offensive and unprofessional conduct").

Notably, this District recently addressed similar arguments of bias against ALJ Lee from Plaintiff's counsel. *See Shanta B.*, 2024 WL 3534338, at *6–7; *James R.*, 2023 WL 6389097, at *4–5. As noted in both cases, "poor statistics in other cases are not sufficient for the Court to find bias." *Shanta B.*, 2024 WL 3534338, at *7 (quoting *James*, 2023 WL 6389097, at *5); *see also Kirlew v. Att'y Gen. of U.S.*, 267 F. App'x 125, 128 (3d Cir. 2008) (holding the courts "cannot base a finding of bias merely on repeated adverse rulings"); *Johnson v. Comm'r of Soc. Sec.*, Civ. No. 08–4901, 2009 WL 4666933, at *4 (D.N.J. Dec. 3, 2009) (holding "an ALJ's impartiality should not be judged by result or reputation or by statistics of how that judge has previously ruled"), *aff'd*, 398 F. App'x 727 (3d Cir. 2010) .

Here, a review of the record indicates Plaintiff filed a motion for recusal on April 27, 2023, which ALJ Lee denied on December 19, 2023.[9] (Tr. at 903–04, 912.) The motion for recusal requested ALJ Lee to recuse himself based on an alleged bias against Plaintiff's counsel. (*See generally* R. 903–04.) Specifically, Plaintiff alleges that although his counsel is "routinely successful in no less than two-thirds of all administrative appeals," his counsel has been successful a "little more than 2%" of all appeals before ALJ Lee. (Tr. at 903.) Plaintiff does not allege any bias as to "ethnicity, gender, orientation or origin." (Tr. at 903.)

As poor statistics alone are generally insufficient to support a finding of bias from an ALJ, *see Shanta B.*, 2024 WL 3534338, at *7; *James*, 2023 WL 6389097, at *5, Plaintiff's request that on remand the new hearing be held before another ALJ is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's motion to vacate the decision and remand the matter pursuant to sentence four of 42 U.S.C. § 405(g) is **DENIED**; Plaintiff's cross-motion to reverse the decision is **DENIED**; and the Commissioner's decision is **VACATED** and the matter is **REMANDED** for additional administrative proceedings and further evaluation consistent with this Opinion. An appropriate order follows.

Date: September 30, 2025

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[9] Following the denial, Plaintiff did not present his objections to the Appeals Council. *See* 20 C.F.R. § 404.940.